UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MARIE McPHEE,                          Case No. 12-13931

           Plaintiff,                          George Caram Steeh
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 17)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On September 5, 2012, plaintiff Angela Marie McPhee filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge George Caram Steeh referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for a period of disability and disability insurance benefits and

supplemental security income benefits.  (Dkt. 3).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 12, 17).

### B.     Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits and supplemental security income on March 2, 2009, alleging that she became disabled on December 12, 2006.  (Dkt. 10-5, Pg ID 136-44).  The claim was initially disapproved by the Commissioner on April 27, 2009.  (Dkt. 10-5, Pg ID 87-88). Plaintiff requested a hearing and on August 3, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the case de novo.  (Dkt. 10-2, Pg ID 56-85).  In a decision dated September 22, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 39-52). Plaintiff requested a review of this decision on November 18, 2010.  (Dkt. 10-2, Pg ID 38).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 13, 2012, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 32-34); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 28 years of age on the alleged disability onset date.  (Dkt. 10-2, Pg ID 50).  Plaintiff's relevant work history included work as a fast-food worker, cashier and deli clerk.  (Dkt. 10-2, Pg ID 76).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 10-2, Pg ID 44).  At step two, the ALJ found that plaintiff's degenerative joint disease of the left knee, obesity, mood, anxiety and adjustment disorders, and borderline intellectual functioning were "severe" within the meaning of the second sequential step, but that her reading and mathematics disorders, dizzy spells, asthma and bronchitis, and back pain were not severe impairments.  (Dkt. 10-2, Pg ID 44-45). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 10-2, Pg ID 45-47).  The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary level work, with no climbing, kneeling, or crawling, no more than simple, routine, repetitive tasks with one- or two-step instructions, no strict production quotas, defined as the requirement to produce a specific number of units of work in a specified period of time, and work that allows the alternating of sitting and standing at will.  (Dkt. 10-2, Pg ID 47-50).  At step four,

the ALJ found that plaintiff could not perform her previous work, classified as requiring a light exertional level. (Dkt. 10-2, Pg ID 50). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 10-2, Pg ID 50-51).

**B.    Plaintiff's Claims of Error**

Plaintiff argues that the ALJ failed to reasonably weigh her mental and physical limitations and take into account how those limitations affect her ability to work. Plaintiff contends that the ALJ erred in not classifying her right lateral epicondylitis (tennis elbow) and her reading and mathematical limitations as "severe" impairments at step two of the sequential analysis. Plaintiff further argues that her mental functional limitations are greater than found by the ALJ.

According to plaintiff, her treating "Psychiatrist," Naveed Mahfooz, M.D. completed an evaluation of plaintiff for the State of Michigan Department of Human Services in February 2009, and found that plaintiff had limitations in comprehension, memory, sustained concentration, and following simple instructions. (Dkt. 10-8, Pg ID 447-49).[1] Dr. Mahfooz indicated on the evaluation form that plaintiff was stable, she could occasionally lift up to 20 pounds, could stand or walk less than two hours in an eight-hour workday, could not perform

---

[1] Plaintiff repeatedly refers to Dr. Mahfooz as her "treating Psychiatrist." However, the record evidence indicates that Dr. Mahfooz listed his specialty as "Internal Medicine," not psychiatry. (Dkt. 10-8, Pg ID 448).

4

repetitive grasping, reaching or pushing/pulling with her hands and arms, could not operate leg or foot controls, was limited in comprehension, memory, sustained concentration and following simple instructions, and opined that plaintiff "is disabled." (*Id.*). According to plaintiff, if the ALJ had given Dr. Mahfooz's opinion controlling weight, she would be precluded from doing any unskilled work because she cannot even follow simple instructions.

Plaintiff further argues that the ALJ erred in finding no objective evidence supporting plaintiff's "severe" reading and mathematical deficiencies. She testified that she cannot grocery shop because she has trouble adding and subtracting and that she reads at the second or third grade level. A July 2007 Psychiatric/Psychological consultative evaluation by Mark Zaroff, Ph.D., L.P., for the State of Michigan Disability Determination Service found that plaintiff "struggled with numerical reasoning skills, which was her only score in the impaired range today." (Dkt. 10-7, Pg ID 372). Dr. Zaroff noted that plaintiff had good contact with reality, her thoughts were logical, organized and goal directed, her motivation appears to be poor, her affect is flat and constricted, and that she does not seem to exaggerate or minimize symptoms. (Dkt. 10-7, Pg ID 368-73). Testing revealed a Verbal Scale Standard Score of 75, a Performance Scale Standard Score of 81, with a Full Scale Standard Score of 76, placing her overall intellectual functioning in the borderline range of the population. (*Id.*). Plaintiff

5

was diagnosed with Major depressive disorder, recurrent, moderate severity at the time, borderline intellectual functioning and assigned a score of 53 on the Global Assessment of Functioning scale, with a fair prognosis. (*Id.*).

Plaintiff also contends that she completed a Psychological Evaluation on September 10, 2009, which determined that plaintiff's reading was at the 2.1 grade level, and that her reading skills were so inadequate that she could not do the written tests. (Dkt. 10-9, Pg ID 704-09). The evaluation determined, based on testing, that plaintiff performed in the borderline range of intellectual functioning, and plaintiff was diagnosed with Major Depression and Personality Disorder NOS–immature/inadequate traits. (*Id.*). Plaintiff argues that the ALJ failed to take these severe reading and intellectual impairments into consideration when determining plaintiff's RFC.

Plaintiff further argues that the ALJ failed to reasonably evaluate her physical limitations. According to plaintiff, her elbow condition is a severe limitation, as supported by her testimony and the medical evidence. Plaintiff complained about a four-year history of pain in her right elbow in July 2008 (Dkt. 10-7, Pg ID 375), which caused her to seek physical therapy. (Dkt. 10-7, Pg ID 396-97). Plaintiff was diagnosed with right lateral epicondylitis, and she described pain at 8 on a 10-point scale and reported that she had trouble sleeping because of the pain. (*Id.*). Examination revealed a range of motion for the right elbow within

6

normal limits, 4/5 strength in the right wrist, and tenderness of the lateral and medial epicondyl.  (*Id.*).  Plaintiff argues that this objective medical evidence and her subjective complaints of pain constitute substantial evidence that her right elbow pain should have been classified as a "severe" impairment.

Finally, plaintiff argues that she is unable to perform the essential functions of the jobs of visual inspector and order checker identified by the vocational expert because the jobs require frequent reaching, handling, and fingering, and her right elbow severe impairment prevents her from performing such tasks. This, in turn, would erode the number of jobs plaintiff could perform.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that plaintiff presents three issues for review: (1) whether the ALJ reasonably weighed plaintiff's mental and physical limitations; (2) whether the ALJ reasonably weighed the opinion of Dr. Mahfooz; and (3) whether there are a significant number of jobs in the national economy that plaintiff can perform with her RFC.

According to the Commissioner, the ALJ reasonably evaluated plaintiff's mental and physical limitations.  Plaintiff's argument that the ALJ should have considered her right elbow pain and reading and math limitations as "severe" is a red herring because the ALJ considered both conditions when evaluating plaintiff's RFC.  *See Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007) (quoting

7

*Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))

("Because the ALJ considered these impairments when determining Fisk's residual

functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in

classifying the impairments as non-severe at step two.").  Once an ALJ determined

that there was a least one severe impairment, it was "of little consequence" whether

the ALJ characterized any other alleged impairment as severe or not severe.

*Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003); 20 C.F.R.

§ 404.1545(e).  Thus, plaintiff's argument regarding the ALJ's step two analysis

lacks merit.

The Commissioner further contends that the ALJ did consider plaintiff's

math and reading capabilities, recognizing that plaintiff had limitations but

reasonably finding that the record evidence did not support such profound

deficiencies.  The ALJ properly recognized that plaintiff tested at the second or

third grade reading level, and that plaintiff graduated from high school, with

special education courses.   (Dkt. 10-2, Pg ID 44; 10-6, Pg ID 183; 10-9, Pg ID

706).  The consultative examiner noted deficits in reading and mathematics, but did

not diagnose a reading or mathematics disorder, and noted that plaintiff could

manage her benefit funds, but had trouble with numerical reasoning and would

benefit from assistance.  (Dkt. 10-2, Pg ID 45; 10-7, Pg ID 373).  And, the state

agency psychological expert opined that plaintiff "will have trouble with complex

8

tasks in demanding work settings, due to moderate restrictions in concentration and pace/persistence" but "retains the capacity to perform simple, routine, 2-step tasks on a sustained basis."  (Dkt. 10-8, Pg ID 586).  The ALJ similarly limited plaintiff to no more than simple, routine, repetitious tasks, with one- or two-step instructions (Dkt. 10-2, Pg ID 47), and his finding is thus supported by substantial evidence.  The Commissioner further notes that the ALJ made an alternative finding that if he limited plaintiff to jobs that require no more than recognition of letters, simple words, number, and symbols, plaintiff could perform the jobs identified by the VE.  (Dkt. 10-2, Pg ID 45, 78-80).  The VE testified that the reading requirements for the jobs identified would be to identify letters, numbers and simple words, and plaintiff does not suggest that she cannot identify letters, numbers and simple words.  Thus, even if the ALJ adopted the additional limitations to plaintiff's reading and math, she could still perform the identified jobs, and any error by the ALJ is not adopting more stringent math and reading limitations was harmless.

The Commissioner also argues that the ALJ reasonable evaluated plaintiff's physical limitations, and, contrary to plaintiff's suggestion, did consider plaintiff's elbow condition.  However, a mere diagnosis does not equate to a "severe" impairment or indicate how that impairment may or may not manifest into work-related functional limitations.  *See Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx.

923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("mere diagnosis of arthritis . . . says nothing about the severity of the condition").  According to the Commissioner, the ALJ reasonably found that the medical evidence did not demonstrate any more serious limitations than allowed for by the RFC, pointing to plaintiff's normal range of motion in her elbow at her discharge from physical therapy, that plaintiff reported she is 70% better, with pain at 6 on a 10 point scale at the worst, strength at 4+/5 and grip strength of 34 pounds.  (Dkt. 10-2, Pg ID 49; 10-7, Pg ID 400).  Thus, while plaintiff may disagree with the ALJ's findings, the ALJ made a reasoned choice based on substantial evidence, and his decision should be affirmed.

Second, the Commissioner argues that the ALJ reasonably weighed the opinion of Dr. Mahfooz, noting that the doctor did not identify any reading deficiencies and did not check the box for "reading/writing" limitations.  (Dkt. 10-8, Pg ID 448).  Further, that fact that Dr. Mahfooz opined that plaintiff "is disabled" and plaintiff receives disability from the State of Michigan is not controlling on the ALJ.  20 C.F.R. § 404.1504 ("A decision by any non-governmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are

10

disabled or blind.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.").   According to the Commissioner, establishing disability in the State of Michigan requires only "certification by DHS medical consultants as unable to work due to a mental or physical disability for at least 90 days," which is not the same as the standard under the Act.  And, the ALJ reasonably declined to give Dr. Mahfooz's opinion controlling or significant weight because it was not supported by objective medical evidence.  The ALJ noted that Dr. Mahfooz's assessments consist of checked boxes and brief statements with no citation to the medical records or further explanation, and concluded that he cannot give significant weight to forms which do not show the bases for their entries.  (Dkt. 10-2, Pg ID 49-50; 10-8, Pg ID 447-49).  The Commissioner notes that the form asked the medical source to indicate abnormal findings related to the examination areas such as "mental" and "musculoskeletal," and Dr. Mahfooz merely wrote "forgetful" in the "mental" category and "knees OA" in the "musculoskeletal" category.  (Dkt. 10-8, Pg ID 447).  The Commissioner contends that the ALJ properly found that Dr. Mahfooz's opinion failed to merit significant weight in light of its scant support.

Third, the Commissioner argues that the ALJ reasonably found that plaintiff can perform a significant number of jobs in the national economy.  Contrary to plaintiff's argument that she could not perform the jobs of visual inspector and

11

order checker because of the limitations caused by her elbow condition, the ALJ

reasonably found such limitations unsupported by the medical record, and the ALJ

was not required to include unsubstantiated complaints in the hypothetical

questions posed to the vocational expert.  *Stanley v. Sec'y of Health & Human

Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate

unsubstantiated complaints into his hypotheticals").  Moreover, even taking

plaintiff's argument as true, she concedes that she would be capable of performing

the surveillance system monitor job, which has 82,000 available jobs in the

national economy.  Plaintiff offers nothing to show that 82,000 jobs is not a

significant number of jobs available in the national economy, and thus she still

would be found not disabled.  *See Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx.

369, 375 (6th Cir. 2006) (finding "870 jobs can constitute a significant number in

the geographic region").

Finally, the Commissioner points out that the ALJ did not obtain a medical

consultant's opinion on the issue of equivalence concerning plaintiff's physical

impairments because it employed a prototype disability determination model called

the single decisionmaker ("SDM") model at the initial disability determination.

The Commissioner argues that the use of the SDM model in this case does not

require a medical opinion on the issue of equivalence, and that the ALJ did not err

in making the step-three determination concerning plaintiff's physical impairments

without a medical consultant, citing *Timm v. Comm'r of Soc. Sec.*, 2011 WL 846059,at *4 (E.D. Mich. Feb. 14, 2011), *adopted by* 2011 WL 845950 (E.D. Mich. Mar. 8, 2011); *Gallagher v. Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011), *adopted by* 2011 WL3841629 (E.D. Mich. Aug. 30, 2011). According to the Commissioner, the agency set forth two specific circumstances in which the SDM should make every effort to obtain the opinion of a medical or psychological consultant–(1) before an initial determination is made that a claimant is not disabled in cases where there is evidence indicating the existence of a mental impairment; and (2) whenever a determination of disability is required in claims filed on behalf of children under age 18 claiming SSI payments based on disability. 20 C.F.R. § 404.906(b).  Neither of those situations applies here, and the Commissioner argues that if the ALJ were required to obtain an opinion on the issue of equivalence prior to issuing a decision in *every* case, that requirement would radically alter the SDM model as designed by the agency and is precisely the inefficiency that the SDM model sought to eliminate.  Thus, no medical opinion on equivalence was required in this case and the ALJ's opinion is supported by substantial evidence.

Moreover, because it is plaintiff's burden to prove at step three that her impairment(s) met or medically equaled an impairment, she "must present medical evidence that describes how [her] impairment is equivalent to a listed impairment."

13

*Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004). Plaintiff

made no such argument here and presented no evidence that her impairment, or

combination of impairments, equaled any listed impairment, and therefore has

waived the claim. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir.

2006) ("[W]e limit our consideration to the particular points that Hollon appears to

raise in her brief on appeal."). And, given plaintiff's tacit admission that she can

perform the job of surveillance system monitor, even if plaintiff's waiver were

excused, remand would be futile and any error should be deemed harmless.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Therefore, the

Commissioner concludes, the Court should affirm the decision of the ALJ and

deny plaintiff's request for a sentence six remand.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

15

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

 The scope of this Court's review is limited to an examination of the record

16

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

**C. Analysis and Conclusion**

**1. The ALJ reasonably evaluated plaintiff's mental and physical impairments**

Plaintiff complains that the ALJ erred in failing to classify her right lateral

epicondylitis (tennis elbow) and reading and mathematical limitations as "severe

impairments" at step two of the sequential evaluation. However, the omission of

an impairment from the step two findings does not warrant remand because the

ALJ found that plaintiff had other impairments–degenerative joint disease of the

left knee; obesity; mood, anxiety and adjustment disorders; and borderline

intellectual functioning–that met the criteria for severity at step two, and thus

proceeded to step three in the sequential analysis. *See Maziarz v. Sec'y of Health*

*& Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the

Secretary had found at least one other "severe" limitation, the severity of Miziarz's

cervical condition was irrelevant for the step two analysis). If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe. 20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). As shown below, the ALJ here considered plaintiff's elbow condition and reading and math limitations in evaluating plaintiff's residual functional capacity, and thus the ALJ's finding that these conditions were not "severe" limitations cannot be grounds for remand. *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003) (a step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC).

### a.    Mental limitations

Plaintiff argues that her mental limitations are greater than indicated by the ALJ, and that the ALJ failed to consider her reading and mathematical limitations as severe. However, a review of the ALJ's decision and the record evidence reveals that the ALJ considered plaintiff's reading and mathematical abilities and recognized that she had limitations, but found that the record evidence does not support plaintiff's claimed profound deficiencies in those areas. (Dkt. 10-2, Pg ID

44).  The ALJ recognized that plaintiff obtained a basic reading score at the 2.1

grade level, but also noted that she is a high-school graduate, albeit in special

education.  (*Id.*)  Further, a July 2007 consultative examiner found borderline

intellectual functioning, with deficits in reading and mathematics, but did not

diagnose a reading or mathematics disorder.  (Dkt. 10-2, Pg ID 44-45; Dkt. 10-7,

Pg ID 368-73).  That consultative examiner also noted that plaintiff was able to

manage her own benefit funds, although she has trouble with numerical reasoning

and would benefit from assistance.  (Dkt. 10-7, Pg ID 373).  Further, the state

agency psychological expert opined that plaintiff "retained the capacity to perform

simple, routine, 2-step tasks on a sustained basis."  (Dkt. 10-8, Pg ID 586).  The

ALJ further noted that even if he provided for greater limitations–limiting plaintiff

to jobs that require no more than recognition of letters, numbers, symbols and

simple words–plaintiff could still perform the jobs identified by the vocational

expert.  (Dkt. 10-2, Pg ID 45).[2]  Thus, the ALJ's assessment of plaintiff's mental

limitations, including her reading and mathematical abilities, is supported by

substantial evidence.

### b.    Physical impairments

Plaintiff also argues that the ALJ erred in failing to consider her elbow

---

[2] The ALJ declined to adopt such a provision in the RFC, finding it unsupported by the
record evidence.

condition as a "severe" impairment.  According to plaintiff, she sought treatment for pain in her right elbow in July 2008, she was diagnosed with right lateral epicondylitis (tennis elbow), and the pain caused her to seek physical therapy. (Dkt. 10-7, Pg ID 375, 396-97).  However, a mere diagnosis does not equate to a severe impairment or indicate how that impairment may or may not manifest into work-related functional limitations.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.").  The ALJ here reasonably considered plaintiff's elbow condition and recognized that she complained of elbow pain and limited grasping ability, but noted that an August 2008 physical therapy discharge summary noted that plaintiff's right elbow range of motion was within normal limits.  (Dkt. 10-2, Pg ID 49; 10-7, Pg ID 400); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. Appx. 771, 779-80 (6th Cir. 2008) (finding condition not "severe" when tests indicate a normal range of motion) (citing *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620-21 (6th Cir. 1987)). Plaintiff indicated that she was 70% better, her wrist extensor and grip strength improved to 4+/5 and 34 pounds, respectively, and she was discharged from physical therapy with a home exercise program.  (Dkt. 10-7, Pg ID 400).  Thus, the ALJ's finding that plaintiff's elbow condition would not preclude work at the sedentary level is supported by substantial evidence.

23

### 2.     The ALJ reasonably weighed Dr. Mahfooz's opinion

Plaintiff alleges that the ALJ erred in not giving her treating physician, Dr.

Mahfooz's, opinion controlling weight.  In weighing the opinions and medical

evidence, the ALJ must consider relevant factors such as the length, nature and

extent of the treating relationship, the frequency of examination, the medical

specialty of the treating physician, the opinion's evidentiary support, and its

consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).

Therefore, a medical opinion of an examining source is entitled to more weight

than a non-examining source and a treating physician's opinion is entitled to more

weight than a consultative physician who only examined the claimant one time.  20

C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific

reasons for the weight given to the treating source's medical opinion, supported by

the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's

opinion and the reasons for that weight."  Social Security Ruling ("SSR") 96-2p,

1996 WL 374188, *5.  The opinion of a treating physician should be given

controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and is "not inconsistent with the other substantial

evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2000); 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating

source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, at *16 (W.D. Tenn. Mar. 26, 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'"  *Adams v. Massanari*, 55 Fed. Appx. 279, 284 (6th Cir. 2003).  Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires.  *Wilson*, 378 F.3d at 545 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.")).

In the view of the undersigned, the ALJ gave sufficiently good reasons for

not giving Dr. Mahfooz's opinions controlling weight.  Plaintiff relies primarily on a February 2009 evaluation completed by Dr. Mahfooz for the Michigan Department of Human Services.  (Dkt. 10-8, Pg ID 447-48).  As the ALJ properly noted, Dr. Mahfooz's assessment consisted of checking boxes on a form, and brief statements with no citation to the medical records or further explanation.  Dr. Mahfooz was to indicate abnormal findings in defined examination areas, and under "Musculoskeletal" Dr Mahfooz only indicated "Knee OA," and under "Mental" he merely indicated "forgetful," with no further explanation or analysis. (*Id.*).  He opined plaintiff could occasionally lift and carry up to 20 pounds, stand/walk two hours in an eight-hour workday, with no limitation on sitting, and that she could not operate foot/leg controls, or use her upper extremities for repetitive simple grasping, reaching, or pushing/pulling.  (*Id.*).  Dr. Mahfooz indicated plaintiff was limited in her comprehension, memory, sustained concentration and following simple orders, but not limited in reading/writing or social interaction.  (*Id.*).  He then concluded plaintiff "is disabled."  (*Id.*).

Plaintiff argues that, based on Dr. Mahfooz's evaluation, her mental limitations are far greater than indicated by the ALJ.  However, the ALJ reviewed the record evidence and explained his reasoning for his RFC finding.  He recognized plaintiff was diagnosed with mood, anxiety, and adjustment disorders, as well as borderline intellectual functioning.  (Dkt. 10-2, Pg ID 48; 10-8, Pg ID

575).  The ALJ noted, however, that plaintiff's mental health treatment remained

relatively routine and conservative, she has not required any hospitalization or

emergency room visits for mental health-related symptoms, she evidenced good

contact with reality, denied any hallucinations or delusions, and was oriented times

three.  (Dkt. 10-2, Pg ID 48).  In addition, in June 2007, a consultative examiner

diagnosed major depressive disorder, recurrent, "moderate severity at this time,"

and borderline intellectual functioning, and assigned a Global Assessment of

Functioning ("GAF") score of 53. (Dkt. 10-7, Pg ID 373).  The ALJ further noted

that plaintiff was noted to have depression in October 2008, February and March

2009, but she was described as having an appropriate appearance, orientation times

three, lucid/coherent thought content, intact memory and concentration, fair

judgment, good insight, and a cooperative rapport.  (Dkt. 10-2, Pg ID 48; 10-7, Pg

ID 420, 422, 427, 436).  Plaintiff reported doing well on her current medications in

October 2009, and denied any mood symptoms, anxiety, or sleep or appetite

problems, (Dkt. 10-8, Pg ID 699), and in April and May 2010, plaintiff was

described as having an appropriate and anxious affect, normal thought processes,

and normal judgment and insight, and to be responding to treatment.  (Dkt. 10-8,

Pg ID 720-21, 728).  Thus, the undersigned finds that the ALJ reasonably

concluded that plaintiff's mental health treatment records indicate that she has

symptoms associated with her mental impairments, but no more than moderate

limitations in any functional area, and that the RFC fully accommodates these limitations by limiting plaintiff to work that involves no more than simple, routine, repetitive tasks, with one- or two-step instructions, and that does not require strict production quotas. (Dkt. 10-2, Pg ID 49).

### 3.   The ALJ failed to adequately consider the State disability determination

Plaintiff notes, in discussing Dr. Mahfooz's opinion, that she receives disability from the State of Michigan. The ALJ recognized this fact, stating "[t]he claimant receives disability from the State of Michigan, but that State determination was based on its rules and is therefore not controlling here," citing 20 C.F.R. §§ 404.1504, 416.904. (Dkt. 10-2, Pg ID 49). The Commissioner argues that the ALJ reasonably found the state disability determination was not controlling. 20 C.F.R. § 404.1504 provides:

> A decision by any non-governmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

However, while the decision of another governmental agency is not binding on the ALJ, SSR 06-03p provides that "evidence of a disability decision by another governmental or non-governmental agency *cannot be ignored* and *must be*

28

*considered.*"  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (emphasis

added);[3] *see also Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp.2d 700, 717 (S.D.

Ohio 2012) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)

(citing to decisions from nine circuits holding that the ALJ must, at a minimum,

consider other federal agencies' disability findings)).  In this regard, the

adjudicator "should explain the consideration given to these decisions in the notice

of decision for hearing cases and in the case record for initial and reconsideration

cases."  SSR 06-03p, 2006 WL 2329939 at *7.  "The Sixth Circuit has observed

that disability decisions of other governmental agencies should be taken into

account."  *King v. Comm'r of Soc. Sec.*, 779 F. Supp.2d 721, 725 (E.D. Mich.

2011) (citing *Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985)).  However, the

Sixth Circuit has not determined the amount of weight the Commissioner must

give other state agency disability determinations.  *See Shumaker v. Comm'r of Soc.

Sec.*, 2013 WL 441060, at *14 (N.D. Ohio Jan. 15, 2013) (citing *King,* 779 F.

Supp.2d at 725 (explaining that "the relative weight to be given [state agency]

evidence will vary depending on the factual circumstances of the case," but "ALJ's

need not give 'great weight' to a [state agency] disability determination if they

adequately explain the valid reasons for not doing so."), *adopted by* 2013 WL

---

[3] Although Social Security Rulings do not have the same force and effect as statutes or
regulations, "[t]hey are binding on all components of the Social Security Administration" and
"represent precedent, final opinions and orders and statements of policy" upon which the agency
relies in adjudicating cases.  20 C.F.R. § 402.35(b)(1).

441011 (N.D. Ohio Feb. 4, 2013)).

In *Burrows v. Commissioner of Social Security*, 2012 WL 5411113 (E.D. Mich. Sept. 28, 2102), *adopted by* 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012), the plaintiff testified that she was approved for state disability benefits in March 2009 and, at the time of the hearing, was receiving benefits. *Id.* at *12. However, there was no indication in the record that the ALJ sought to obtain records related to the plaintiff's application for state disability benefits or that he gave any consideration to the disability determination made by the State of Michigan. *Id.* The court remanded the matter to the ALJ so the ALJ could obtain records pertaining to the plaintiff's approval for state disability benefits and to explain the consideration he gives to such records in formulating his decision as to whether the plaintiff is disabled under the Act. *Id.* Similarly, in *King v. Commissioner of Social Security*, 779 F. Supp.2d 721 (E.D. Mich. 2011), the ALJ stated that she "does consider" the Veterans Affairs ("VA") determination that plaintiff had 100% permanent disability, and cited the regulation that states that another agency's disability determination does not bind the Commissioner, but did not explain whether she accorded any weight to the VA determination. *Id.* at 726. The court found that "there may be good reasons for disregarding the determination, but the Court on review is left to speculate on the ALJ's rationale in the absence of any meaningful discussion of the evidence," and thus remanded the case "for further

30

consideration of the evidence in light of a better-developed record of the VA

disability determination." *Id.* at 727; *see also Lowery*, 886 F. Supp.2d at 717

(remanding for failure to consider VA's decision to grant disability benefits when

ALJ only stated "He is currently receiving Veteran's Administration disability

benefits" in the "Summary of Plaintiff's Testimony" section and did not discuss the

VA findings further).

    In the view of the undersigned, the ALJ here, like in *Burrows* and *King*,  did

not adequately consider the State disability determination or explain his rationale

for disregarding that decision in reaching his conclusion that plaintiff is not

disabled, other than to summarily state "that State determination was based on its

rules and is therefore not controlling here."  However, the October 20, 2009

"Hearing Decision" by the State ALJ, which is part of the record evidence supplied

by plaintiff's attorney in this case, explains that "[i]n order to receive [Medical

Assistance ("MA")] benefits based upon disability or blindness, [plaintiff] must be

disabled or blind *as defined in Title XVI of the Social Security Act (20 C.F.R.

416.901)*" and that the Department "*utilizes the SSI definition of disability* when

making medical decisions on MA applications," defining disability as "the inability

to do substantial gainful activity (SGA) . . . which has lasted or can be expected to

last for a continuous period of not less than 12 months (20 CFR 416.905)."  (Dkt.

10-8, Pg ID 684-93 (emphasis added)).  Further, the State ALJ followed the same

31

five-step sequential analysis set forth in the Act that the ALJ here did and concluded that plaintiff was unable to perform the full range of sedentary work activities on a regular and continuing basis. (*Id.*). Although the ALJ here did not wholly ignore the state disability determination, and while the undersigned recognizes there is no bright line rule to determine whether an ALJ has sufficiently considered a piece of evidence, the undersigned believes that the ALJ's mere mention of the state agency determination and his cursory rejection of the determination as "based on its own rules" is insufficient consideration and this matter should be remanded so the ALJ can obtain additional records pertaining to plaintiff's approval for state disability benefits, if he deems necessary, and so that he can adequately explain the consideration he gives the records pertaining to plaintiff's approval for state disability benefits in formulating his decision as to whether plaintiff is disabled under the Act. *See Burrows*, 2012 WL 5411113, at *12; *Lowery*, 886 F. Supp.2d at 717-18; *King*, 779 F. Supp.2d at 727.

**4.    The ALJ reasonably found that a significant number of jobs existed in the national economy**

The vocational expert identified three jobs that someone with plaintiff's vocational profile and RFC could perform: visual inspector (65,000 jobs in the national economy), surveillance system monitor (82,000 jobs in the national economy), and order checker (180,000 jobs in the national economy).  (Dkt. 10-2, Pg ID 78).  Plaintiff argues that she could not perform the jobs of visual inspector and order checker because of the limitations caused by her elbow condition.  However, as discussed above, the undersigned finds that the ALJ reasonably found such limitations unsupported by the record evidence, and the ALJ was not required to include unsubstantiated complaints in the hypothetical questions posed to the vocational expert.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").  Moreover, even if the jobs of visual inspector and order checker were eliminated, there is still vocational expert testimony that plaintiff could perform work as a surveillance system monitor, at 82,000 jobs in the national economy, which plaintiff does not challenge and which is still a significant number of jobs available in the national economy.  *See Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 375 (6th Cir. 2006) ("870 jobs can constitute a significant number in the geographic region") (citing *Stewart v. Sullivan*, 904 F.2d 708 (Table) (6th Cir. 1990) (125 jobs in the local area is a

33

significant number of jobs)).  Thus, the ALJ reasonably found that a significant

number of jobs exist in the national economy that plaintiff could perform.

### 5.   Single Decisionmaker

In this case, the single-decision maker (SDM) model was used pursuant to

20 C.F.R. § 404.906(b)(2).  This regulation provides streamlined procedures as an

experiment, in which State Agency disability examiners may decide cases without

documenting medical opinions from State Agency medical consultants.  The

"single decisionmaker model" was an experimental modification of the disability

determination process that happens to have been used in Michigan.  *See Leverette*

*v. Comm'r of Soc. Sec.*, 2011 WL 4062380 (E.D. Mich. Aug. 17, 2011), *adopted by*

2011 WL 4062047 (E.D. Mich. Sept. 13, 2011).  This experiment eliminated the

reconsideration level of review and allowed claims to go straight from initial denial

to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the

single decisionmaker) to render the initial denial of benefits without documenting

medical opinions from the state agency medical consultants.  *Id*. (citing 20 C.F.R.

§§ 404.906(b)(2), 416.1406(b)(2)).  The Programs Operations Manual System

("POMS") requires it to "be clear to the appeal-level adjudicator when the SSA-

4734-BK [the PRFC assessment form] was completed by an SDM because

SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI

§ 24510.05.

Plaintiff's physical impairments were evaluated by an SDM, Terri Rytkonen, who concluded that plaintiff could occasionally lift up to 20 pounds, stand and/or walk and sit about six hours in an eight-hour workday, never climb ladders/ropes/scaffolds and occasionally climb ramps/stairs, kneel and crawl, and should avoid hazards such as machinery and heights.  (Dkt. 10-8, Pg ID 554-61). Thus, no medical opinion was obtained at this level of review, in accordance with this model.  The Commissioner argues that the ALJ did not err in making his step three determination concerning plaintiff's physical impairments without a medical consultant because it is plaintiff's burden at step three to prove that her impairments met or medically equal a listed impairment, and the responsibility for deciding medical equivalence rests with the ALJ or Appeals Council.  However, for the reasons explained below, the undersigned finds that while the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand.

As set forth in *Stratton v. Astrue*, — F. Supp.2d —; 2012 WL 1852084, *11-12 (D.N.H. May 11, 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency

35

> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 12, 2011) (warning

that an ALJ who makes a step-three equivalence determination without

expert-opinion evidence runs the risk of impermissibly playing doctor).

    The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.  *Stratton*, 2012

WL 1852084, at *12 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D.

Tex. May 23, 2008) ("The basic principle behind SSR 96-6p is that while an ALJ

is capable of reviewing records to determine whether a claimant's ailments meet

36

the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, 2012 WL 1852084, at *12 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 10-3, Pg ID 87-88).

The great weight of authority[4] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, 2012 WL 1852084, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on

---

[4] In *Stratton*, the court noted that a decision from Maine "stands alone" in its determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.* (citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003).

equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D.

Wash. May 25, 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind.

July 21, 2008) (holding that where record included no expert-opinion evidence on

equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to

whether Mr. Wadsworth's impairments equaled a listing").  While the

Commissioner argues that courts in this district have concluded that the ALJ need

not obtain expert opinion evidence in cases involving an SDM, citing *Gallagher v.*

*Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011) and *Timm v.*

*Comm'r of Soc. Sec.*, 2011 WL 846059 (E.D. Mich. Feb. 14, 2011), the

undersigned does not find these cases persuasive.  In both cases, the court

concluded that because the regulations permitted an SDM to make disability

determination without a medical consultant that the ALJ is, therefore, also

permitted to do so where the "single decisionmaker" model is in use.  However,

nothing about the SDM model changes the ALJ's obligations in the equivalency

analysis.  *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a

claimant's impairment equals a listing is a medical judgment, and an ALJ must

consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka*,

1995 WL 697215, at *2 ("Generally, the opinion of a medical expert is required

before a determination of medical equivalence is made.") (citing 20 C.F.R.

§ 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the

ALJ's obligation to consult a medical expert in making an equivalency

determination is any different in a case where the SDM model is used.  While the

SDM is not required to obtain a medical opinion in cases involving physical

impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the

ALJ's obligations and it makes little sense to conclude that the ALJ is relieved

from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's

analysis does not alter the SDM model, which leaves the SDM discretion as to

whether a medical expert is consulted as to physical impairments.  Rather, the

undersigned's analysis leaves intact the requirements imposed on an ALJ in

making an equivalency determination, which do not otherwise appear to be

modified by the SDM model.  *See Byberg v. Comm'r of Soc. Sec.*, 2013 WL

1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the

purposes of the SDM model beyond the initial determination of disability and into

the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*,

2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (a medical opinion on the

issue of equivalence is required, regardless of whether the SDM model is

implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich.

Feb. 4, 2013), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard

v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a

hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on

the issue of equivalence.").

While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: May 23, 2013                        s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 23, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Gregory H. Bringard, Meghan O'Callaghan, Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood_____
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
